Good morning, Your Honor. John Lemon from Miguel Baron. May it please the Court, while a divided panel of this Court has held that a suspicionless search conducted pursuant to a suspicionless search condition of a violent felon's probation agreement does not violate the Fourth Amendment, this Court has yet to consider whether a suspicionless search condition of lower-level probationers is constitutional. Did you look at United States v. Laura? Yes. Well, I don't know how you say that. United States v. Laura had nothing to do with violent offender. Right, and I believe Laura... Or violent felon, sorry. So United States v. Laura seems to be the case we should follow, right? Well, certainly I believe that we should follow Laura. Okay, so then if we do United States v. Laura, that suggests that we don't look again at violent felon. What we're looking about is we're looking at whether in this particular situation we, well, what we do is we weigh then the interests of both parties and try to see whether we are going to If we look at Laura, tell me why your client is in a better position than Laura. For instance, Barron, your client, his probation terms explicitly allowed the search of his vehicle. In Laura, they didn't say anything about a cell phone. Your client, it's a vehicle, has a lower privacy interest than cell phones. Doesn't that weigh against you winning on a Laura analysis? Well, in... There was also a search of my client's residence. I understand, but we're talking about the vehicle. That's what we're really talking about. We don't have to suppress anything that was in the residence, right? You're not interested in that. But it's all one search, and it's a totality test. But a vehicle's different from a residence. So I understand that you didn't like that he went into the residence. They didn't find anything there. There's really nothing there that your client's going to be in trouble for. They did find evidence that they believe was an issue of gang activity. It wasn't ultimately relevant in the stipulated facts trial. But the larger point is that this was a simultaneous search conducted on my client's vehicle and his residence. And the question under the totality test is the degree of intrusiveness. And so that factor militates total suppression. Okay, I understand your argument. But otherwise, Laura has a tougher case for helping the client than in this case. If you can't include the residence, then you really lose in that particular instance. Let's go to the second. The search didn't happen in Laura. So what do we do with that? Well, I mean, that certainly is a factor that I'm sure the government is going to argue was in favor of. Well, then we let's go. Barron's truck. Are we going to really suggest, even though one can go to the house, that Barron's is that this was a suspicionless search and the Supreme Court is now just a minute. We're talking about suspicionless search. We're going through the, if you will, the inquiry we make on the totality of the circumstances, whether we're supposed to do that. I'm just going through all the things that we have to say about your particular client and what we can say about there. Because when I get to the government's interests, I'm a little bit. Well, I think that perhaps your honor started at the end point. I think the starting point for this is, again, this is a suspicionless search. The Supreme Court has never authorized a suspicionless search for a probationer. And this court has never authorized a suspicionless search for a nonviolent probation. Well, just a minute. Well, I have. Wasn't there your client's name had come up in several other investigations? Well, there was. Someone had apparently, some anonymous source had apparently told the police that my client was present at a shooting, but that was a month earlier. But again, this is a suspicionless search of a nonviolent probationer, which, again, the Supreme Court, neither the Supreme Court nor this court has ever authorized that type of a search, other than in United States v. Baker, which was overruled. Well, we had King. King applied to violent felons, and now we got Laura that gets us past the violent felon approach. Now we are looking at, which I was trying to go through, and I guess I really don't know where you're going because it seems to me that King does not, and I even read from Laura, King does not fully provide the answer. The panel must evaluate the circumstances of the particular case before it to determine if the search was reasonable. So we're determining if it was reasonable. And the first idea, that's why I went through the things that Laura went through. And I came to the same, I mean, I'm trying to see if you can't give me a reason to suggest that this particular search was worse for your client than it was in the Laura case. Give me something to hang on to, otherwise you lose. Well, again, I'm not saying that under the ultimate totality test that Mr. Barone's situation is better than the appellant and Laura. I mean, obviously Laura was a cell phone search and he had a stronger argument under a totality. But again, the starting point is suspicionless searches for... So I'm supposed to overrule King and Laura and go with your client? Well, obviously this court can't overrule another binding decision of this court, so I don't expect you to overrule it, no. But I do think that the language in King creates a lot of problems for people who practice in the district court talking about the question of whether King created a discrete group of probationers for whom these searches will be per se reasonable. And that is violent felons. Because I think that's how it certainly was interpreted originally in our case. And I think that the government made the same argument in Laura. That if a probationer qualifies as a quote unquote violent felon, that a suspicionless search condition is per se reasonable. Well, the problem that I have with that argument... But being a violent felon isn't, that isn't part of the balancing test under Laura. I completely agree. I just think it's unclear from the King opinion if that's the case. I think that certainly... Well, but I think that the Laura opinion makes that pretty clear, doesn't it? Well, actually, Laura said that because the appellant Laura had not been convicted of a crime of violence, they moved past that question. So I don't think it's been addressed. And certainly the district court in this case made a specific finding that Mr. Barone had been convicted of a crime of violence and then did not conduct a totality inquiry. He just said he's been convicted of a crime of violence, therefore he's a violent felon. Can we take into account the kind of crime for which the police are interested in investigating? Whereas they're trying to investigate something here that's related to a gang shooting. And that could be a violent crime. So why can't we take that into account as we sort of put all of this into the totality of the circumstances? And therein lies the rub. I mean, if we're going to take it into account one time, and that's what's going to happen, and we're going to approach each of these cases on a case-by-case basis, then I think, respectfully, this court needs to say that. But I think the government is arguing that there's a two-pronged test. One, is the probationer a violent felon under a totality test? And if the answer is yes, he loses. And if the answer is no, then we go to a totality of the circumstances test. No, I think we go on to a balancing test from here on out. I think there's implicitly a two-part test. I think that King is unclear, and I think that we need more guidance on how to approach these searches. And I meant to ask for time for rebuttal, but I see I'm over. You actually have time reserved, so you can go ahead and reserve that time if you like. Okay, let's hear from the government. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. This issue should come down to a balancing of circumstances. It's two, and only really two, competing interests, the strength of the defendant's privacy interest and the strength of the government's interest in a suspicionless search regime. Here, when this Court undertakes that balancing, this really isn't a close question at all. The fact that the defendant starts as a probationer, this Court and the Supreme Court has said that significantly reduces their expectation of privacy. As Judge Smith pointed out, the fact that this defendant had an unambiguous search waiver, which there was no question it applied to his searches of his vehicle and his property, and that's what was searched here, his truck and his backpack. That's where the incriminating evidence came from. I know my opponent wants to talk about the fact that the home was also searched. I don't think there's anything in this Court's jurisprudence that allows standing to complain about a search where no incriminating evidence was found. Here, the only thing that was found in that house was proof of gang membership. That has to do with the two cases of which he was convicted, which were found in possession of a firearm and possession of cocaine and possession of marijuana. With all of those two, the things I said previously, his privacy interest, if this is where it starts with an average citizen, it's already down here. Then on top of it all, as the Supreme Court held in South Dakota versus Opperman, and as this Court has repeatedly reaffirmed, vehicles already have an even balancing test, I would respectfully submit that the defendant's privacy interests are minimal. Now, on the other side of the balance, as King pointed out, probationers, they're already at statistically proven higher risk of recidivism, and that is one of the state's primary concerns. Here, while that could be said to be just a generic observation that applies to all probationers, as we tried to point out in our brief, the recidivism with respect to gun and weapon violations in particular was severe. It was off the charts. Unlike the defendant in King, for whom this Court approved a suspicionless search, and in that case there was only one prior conviction for domestic violence, here this defendant had two separate gun-related felony convictions in just the three years before the search. And in fact, he incurred the second conviction, that was the state felon in possession, just three months into supervised release for his first federal conviction, which itself reflects an alarming inability to comply with lawful court orders. On top of that, he's a gang member, and on top of that, I mean, he's still a very young man. He incurred those two felonies of which I spoke when he was 21 and 22, I believe. As the record shows, just starting when he was 16, there was already trouble. Getting expelled from high school having a weapon, being arrested for assault with a deadly weapon. So the reason we bring that out, and the United States Supreme Court said in nights specifically that the probation status as having, you know, their criminal history goes to both sides of the balance. And even at page 16 of my opponent's opening brief, he conceded that the defendant's history and characteristics should be relevant under the totality of the circumstances. And what the government would submit then is, if for just any run-of-the-mill probationer, there's already a risk of recidivism that statistics show, this record, it was severe. And on top of that, I know there was questions about, exactly, this search happened in August of 2014. In May of 2014, authorities came to learn or had reason to believe that the defendant was present during an assault and a robbery with an individual named Ray Janus. In July of 2014, which again is just one month before this disputed search, authorities also came to learn that he might have been present during another shooting involving the same person, Ray Janus. In United States v. Lara, this court expressly looked to the reason for the probation search under the government's strength of their interest. And in that case, the only reason for that probation search was that that probationer simply missed a meeting with his probation officer. And while this court respectfully stated in the Lara opinion that it didn't mean to minimize the importance of that, it said that kind of a concern, I believe the words used are worlds apart from concern when somebody such as N. King was suspected of being involved in a homicide. Here, the government respectfully submit, where there's smoke, there's fire. This is very alarming. The whole point of probation is to successfully read. About where there's smoke, it's worth looking to see whether there's fire. So all you were doing was looking to see whether he might have been involved. Absolutely. I appreciate that correction. But again, we would submit that still goes to the strength of the government's interest. It's not like this was for purposes of harassment. This wasn't just something random. I believe the quote from the deputy sheriff involved was that his name kept coming up in regards to some violent bad stuff. And so that's exactly the kind of thing the government would submit is why you should have a suspicionless search regime. And I guess the final point I would make about the strength of the government's interest here, I mean, it's interesting. And King, that was a, from the record, from that case, a one-time domestic violence offender. I would submit a suspicionless search regime, normally for cases of domestic violence, I don't know that you're even going to find evidence on the perpetrator. It's usually the victim, bruises, injuries. Here you have a recidivist gun offender. This is exactly the kind of thing that a suspicionless search regime is well suited to disclose. In this case is a perfect example. This defendant at 630 in the morning on August 28th of 2014, a quick search of his vehicle and a backpack in that vehicle found not only a loaded .45 caliber gun in his waistband, he had ammunition clips, rounds of ammunition, a knife that had been filed down on both edges and body armor all in his vehicle. It's unfortunate, but I believe as the prosecutor said somewhere else in the record below, the problem with this defendant, wherever he is, there always seems to be a gun. And again, I invite my opponent when he comes back up here to try to distinguish these circumstances because compared to Laura, that's one thing. This case is miles apart from that. You have a severely diminished privacy interest and yet the government's strength of their interest is very high. And on that balancing, the government would submit that this isn't even a close case. This is exactly a textbook probation search. And unless the court has any other Mr. Lemon. Thank you, Your Honor. Again, Mr. Barone's position is that the Supreme Court has never authorized suspicionless searches for probationers. But the larger point that I want to make right now is that in the district court, the government argued that Mr. Barone belonged to a discrete class of probationers, violent felons, for whom suspicionless searches are per se reasonable and Mr. Barone belonged to the class and did not conduct the totality test that we have been talking about here today. That's a fundamental problem with King that I understand this court cannot overrule King, but I think it needs to be addressed with respect to the suspicion. Again, this was a simultaneous search of the residence and vehicle and the government specific reason to suspect the smoke council referred to was over a month old at that point. Okay, thank you. Thank you, Mr. Lemon. Case is submitted.
judges: Pregerson, Bybee, N.R. Smith